OPINION
{¶ 1} Plaintiffs-appellants Ray and Patricia LaFollette appeal from a summary judgment rendered against them on their claim for damages resulting from injuries Ray LaFollette sustained when he stepped into a hole in the ground on property owned by defendant-appellee Taylor Building Corporation of America. The LaFollettes contend that the trial court erred by rendering summary judgment against them. We conclude *Page 2 
that the evidence in the record, when viewed in a light most favorable to the LaFollettes, permits a reasonable mind but one conclusion: that the hole in the ground into which Ray LaFollette stepped was an open and obvious hazard, for which Taylor Building is not liable. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} In early August, 2002, Ray LaFollette was purchasing a home from Taylor Building. After signing the contract, LaFollette stepped into a hole on Taylor Building's property, injuring himself. At his deposition, Ray LaFollette described this sequence of events:
 {¶ 3} "A. We had just signed a contract on the house, and he was locking up the door. I pointed — I told him I wanted to make sure the house had a drip edge between the shingles and the wood. We was backing up off the sidewalk looking at the roof. I was pointing out the metal drip edge that I wanted to make sure was on the house.
 {¶ 4} "Q. And as you were backing up, you stepped in the hole?
 {¶ 5} "A. Yes.
 {¶ 6} "Q. And this was at a model home?
 {¶ 7} "A. Yes.
 {¶ 8} "Q. Do you remember what time of the day it was?
 {¶ 9} "A. I think it was after 6:00 p.m.
 {¶ 10} "Q. But it was still light out?
 {¶ 11} "A. Yes." *Page 3 
 {¶ 12} The Lafollettes brought this action for damages against Taylor Building, contending that it was negligent: "by failing to exercise reasonable care for the safety of the Plaintiff by creating and/or maintaining and/or permitting to exist an unreasonably dangerous hazard on its premises, which in the exercise of reasonable care was known or should have been known to the Defendant and which was latent to the Plaintiff; by failing to remove and/or repair and/or make reasonably safe the subject hole hazard; and, by failing to reasonably and adequately warn Plaintiff of the presence of the subject hazard."
 {¶ 13} Ray LaFollette alleged that he sustained injuries including "but not limited to" a torn medial meniscus of the right knee. Patricia LaFollette sought damages for loss of consortium.
 {¶ 14} Taylor Building moved for summary judgment, contending that the hole into which Ray LaFollette stepped was an open and obvious hazard. The trial court concluded that: "Upon the evidence presented, reasonable minds can come to but one conclusion — that the hole on the Taylor property was an open and obvious danger." The trial court sustained Taylor Building's motion for summary judgment, and rendered judgment accordingly.
 {¶ 15} From the summary judgment rendered against them, the LaFollettes appeal.
 II {¶ 16} The LaFollettes' sole assignment of error is as follows:
 {¶ 17} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS *Page 4 
IN GRANTING DEFENDANT'S-APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 18} The LaFollettes rely heavily upon two decisions of this court:Bumgardner v. Wal-Mart Stores, Inc., 2002-Ohio-6856, Miami App. No. 2002-CA-11; and Henry v. Dollar General Store, 2003-Ohio-206, Greene App. No. 2002-CA-47. Taylor Building contends that these cases are no longer good law after Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573.
 {¶ 19} We find nothing in Armstrong v. Best Buy Co., Inc., inconsistent with our holdings in the Bumgardner and Henry cases. Therefore, we disagree with Taylor Building's contention that these two decision are no longer good law. But we find those two cases to be distinguishable from the case before us.
 {¶ 20} In Bumgardner, we held: "Viewing the evidence in a light most favorable to Bumgardner, we find that reasonable minds may disagree whether the pallet [on which Bumgardner tripped] was an unreasonable danger and whether it was open and obvious. From the photographs submitted in evidence, and relied upon by the trial court, it appears that the pallet was located at the end of, but at the back side of, a row of shelves that were stocked with merchandise. It also appears that a reasonable person could find that the pallet was located in an area where a customer would be expected to turn or change direction. A reasonable person could also differ in determining whether the position of the portion of the pallet not covered with cartons of soft drinks was obscured by the row of shelves to which it was adjacent, and whether it constituted an unreasonable tripping hazard." Bumgardner, ¶ 26.
 {¶ 21} In Henry, we held: "Viewing the foregoing facts in a light most favorable to *Page 5 
Henry, reasonable minds might conclude that Dollar General placed the block [upon which Henry tripped] in a location where customers could be expected to turn or change direction, thereby limiting their opportunity to see the block and avoid it. Reasonable minds might also find that Dollar General caused customers to encounter the block while attempting to avoid the trash can full of mops and brooms on the opposite side of the doorway. Likewise, reasonable minds might conclude that Dollar General increased the risk of customers not seeing the cement block by placing merchandise nearby at eye level, thereby creating a distraction. Therefore, under the facts of the present case, we cannot say, as a matter of law, that the cement block constituted an open and obvious danger." Henry,]}14.
 {¶ 22} In both the Bumgardner and Henry cases, acts of the commercial property owner
 {¶ 23} rendered the hazard other than open and obvious, or at least a reasonable finder of fact might so conclude. The placement of each hazard in relation to the course a customer could be expected to traverse, combined with the placement of other objects obscuring the hazard, or distracting attention from it, could be found by a reasonable mind to have rendered the hazard in each case other than open and obvious.
 {¶ 24} In the case before us, by contrast, the owner of the property Taylor Building, did nothing to render the hazard other than open and obvious. Ray LaFollette acknowledged that if he had not been walking backwards, he would have seen the hole, a hole between the sidewalk and the street left when a mailbox pole was removed:
 {¶ 25} "Q. And why could you not have seen the hole had you looked at it before you stepped in it? *Page 6 
 {¶ 26} "A. Because I was looking at the roof, backing up.
 {¶ 27} "Q. Okay. I understand that that's what you were doing at the time, but my question was, if you were looking at the hole before you stepped in it, you could have seen the hole, correct?
 {¶ 28} "A. Yes.
 {¶ 29} "Q. About how wide across was that hole?
 {¶ 30} "A. A couple feet, I believe, two feet."
 {¶ 31} Several photographs of the hole are in evidence. We have examined them, and although the hole might not have been fully two feet in diameter, it is prominent, impossible to miss from a casual inspection of the ground. The conclusion is inescapable that the only reason Ray LaFollette did not see the hole before stepping into it is because he was walking backwards at the time, not looking in the direction he was moving.
 {¶ 32} The LaFollettes argue that the hazard represented by the hole was not open and obvious because Ray LaFollette was not looking in the direction he was walking. This was his choice. From the record, it is clear that Ray LaFollette was neither forced to walk backwards, nor encouraged to do so, by Taylor Building or its agent. He chose to walk backwards, presumably so he could keep the roof continuously in view and determine at what point he and the salesman were far enough away to see the feature on the roof that Ray LaFollette wanted to point out. Of course, Ray LaFollette could have walked forwards, away from the building, turning around from time to time to see if he had walked far enough away for his purpose, but he freely chose to walk backwards, instead, to save himself the trouble of having to turn around to see if he *Page 7 
had got far enough away.
 {¶ 33} A property owner has no duty to warn or to eliminate an open and obvious hazard. "[T]he open and obvious nature of the hazard itself serves as warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." Armstrong v. Best Buy Co.,Inc., supra, at 99 Ohio St.3d 80. The acts of a property owner can render a hazard that would otherwise be open and obvious other than open and obvious. The Bumgardner and Henry cases pose examples. But a person coming onto the property may not, by his or her own act, render a hazard other than open and obvious, thereby creating a duty on the part of the landowner, which would otherwise not exist, to warn of the hazard or to eliminate it.
 {¶ 34} The author recalls a Charlie Chaplin movie where Chaplin is roller-skating, blindfolded, on an upper floor of an abandoned department store. Unknown to him, there is an enormous hole in the middle of the floor. Chaplin skates around and around the hole, performing elegant maneuvers as he does so, often coming close to the edge of the huge hole, oblivious to its existence. When he finally removes the blindfold, he collapses in terror upon seeing the hole in the floor. In our view, the LaFollettes can no more establish a duty, on the part of Taylor Building, to warn of the existence of the hole in the ground between the sidewalk and the street, by reason of Ray LaFollette's having chosen to walk backwards, without looking where he was going, than the roller skater in the Chaplin movie, had he fallen through the hole, could have created a duty, on the part of the department store, to have warned him of the hole's existence, through the roller skater's own choice to skate blindfolded, thereby blinding himself to dangers that would *Page 8 
otherwise have been open and obvious.
 {¶ 35} Again, the result might be otherwise if the owner of the property were to require, or to induce, the invitee to proceed without looking to see where he is going, but that fact pattern is not present in this case. If an invitee chooses to proceed in a manner preventing the invitee from noticing hazards that would otherwise be open and obvious, the invitee does so at his or her own risk; the owner or occupier has no duty to warn of an open and obvious hazard just because an invitee chooses to proceed in a manner that prevents the invitee from noticing the hazard.
 {¶ 36} The LaFollettes' sole assignment of error is overruled.
 III {¶ 37} The LaFollettes' sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 GRADY and DONOVAN, JJ., concur. *Page 1